410 So.2d 1303 (1982)
CONSOLIDATED AMERICAN LIFE INSURANCE COMPANY
v.
William R. TOCHE, Sr.
No. 52934.
Supreme Court of Mississippi.
February 3, 1982.
Rehearing Denied March 31, 1982.
*1304 Heidelberg, Woodliff & Franks, Sam E. Scott, Keith R. Raulston, Jackson, for appellant.
Levi & Denham, Dempsey M. Levi, Ocean Springs, for appellee.
En Banc.
WALKER, Justice, for the Court:
This is an appeal from the Circuit Court of Jackson County wherein William R. Toche, Sr., the appellee, filed his declaration against the defendant, Consolidated American Life Insurance Company, demanding damages, both actual and punitive. Consolidated answered, denying liability. The matter was submitted to a jury which returned a verdict for $10,000 in actual damages and $20,000 in punitive damages against the insurance company.
Thereafter, Consolidated filed its motion for J.N.O.V. or a new trial. The court ordered a new trial on damages only unless Toche consented to a reduction of the verdict for actual damages from $10,000 to $1,094.65. Toche consented to the reduction and was granted a judgment in the amount of $1,094.65 actual damages and punitive damages in the amount of $20,000 against the appellant, Consolidated American Life Insurance Company.
Feeling aggrieved, Consolidated American Life Insurance Company has appealed.
We affirm the judgment as to actual damages in the amount of $1,094.65, but reverse and render as to punitive damages.
This case involves the question of whether the action of the insurance company in initially denying benefits to Mr. Toche and then, after allowing the claim, erroneously refused to pay an additional $29.71 per month which was due to him and for which he had paid a premium, acted with some element of aggression or some color of insult, malice or gross negligence, evidencing a ruthless disregard for the rights of others so as to take the case out of the ordinary rule. Generally, punitive damages are not recoverable for the breach of a contract unless such breach is attended by intentional wrong, insult, abuse or such gross negligence as to consist of an independent tort. Standard Life Ins. Co. of Indiana v. Veal, 354 So.2d 239 (Miss. 1977).
We have attempted to make it clear that since punitive damages are assessed as an example and warning to others, they should be allowed only with caution and *1305 within narrow limits. If an insurance company has a legitimate reason or an arguable reason for failing to pay a claim, punitive damages will not lie. Neither will they lie in cases of simple negligence involving miscalculation of premiums or benefits. For an excellent discussion of when punitive damages are allowable against an insurance company for failure to pay benefits, see Standard Life Insurance Company of Indiana, supra.[1]
The underlying question here is whether the evidence in this case supports an award for punitive damages?
On December 5, 1978, Toche obtained a loan from the First Mississippi National Bank in the amount of $2,965.92. At the same time he obtained, through the bank, credit life and disability insurance covering the loan and paid a premium of $88.97 for disability and $59.31 for credit life. Consolidated American Life Insurance Company was the insurer. Mr. Toche also had two other loans outstanding at that time, one dated September 26, 1977, in the amount of $6,884.44, and another dated March 24, 1978, in the amount of $1,126.80. On December 5, 1978, the same day that he applied for the loan of $2,965.92, Toche visited a Dr. Alexander for what he thought was a chest cold that had been bothering him for the past five days. Thereafter, he experienced chest pain and inflammation of the throat intermittently until December 29, 1978 (approximately three weeks after his last loan was obtained from the bank), when he visited another physician, Dr. Grace, who ordered chest x-rays. When Toche's symptoms persisted, Dr. Grace referred him to a third physician, Dr. Heitzman.
After a surgical diagnostic procedure, Mr. Toche was advised on January 22, 1979, forty-eight days after his last loan application, that he had melanoma (a form of cancer) of the lungs. On January 23, 1979, surgeons removed Mr. Toche's lung. Mr. Toche remained in the hospital approximately one and one-half weeks, and received chemotherapy treatments. It was necessary for Mr. Toche to quit his job as a senior scheduler at Ingalls Shipyard, and he also became inactive in the daily operation of the grocery store which he owned. The record also reveals that Mr. Toche suffered from malignant melanoma several years earlier, which required the surgical removal of one of his eyes. Mr. Toche's claims for benefits directed to the insurance company arrived in the Consolidated offices in Jackson on May 9, 1979. Upon receipt of the claims, Mr. John W. Emory, Jr., Vice President of Consolidated in charge of credit insurance, pursuant to an authorization by Mr. Toche, ordered medical records immediately from the Ocean Springs Hospital as well as the bank.
Upon receipt of the medical information on May 21, 1979, Mr. Emory personally reviewed it and based upon this review, on May 22, 1979, he was of the opinion that the claims based on the September 26, 1977, loan and the March 24, 1978, loan should be allowed, but was of the opinion that the claim with respect to the loan of December 5, 1978, should be denied. Mr. Emory was of the opinion that Mr. Toche's lung cancer preexisted the inception date of the policy (December 5, 1978) and, therefore, was excluded from coverage under the terms of the policy.
The appellant promptly paid the installments on the first two loans, although it was not the disability insurance company which had written the original credit disability insurance. These notes were paid pursuant to an internal agreement between the bank and appellant. John W. Emory, *1306 Jr. explained that the bank "can put us out effective August 1, 1980 and put in another company, simply by notifying us." In that event Toche's claim would be picked up by a new company. Emory went on to say that when the company picks up the insurance of another carrier, they do not go back and research to see if anyone is in good health or bad health. Whatever the note is, the company picks it up subject to the limitations.
Mr. Emory's decision to decline payment of the December 5, 1978, note was based upon his prior dealings with claims for twenty-five (25) years or more and his honest opinion that the cause of disability in all probability had its beginning prior to December 5, 1978, and therefore was not covered under the terms of Toche's policy.
Thereafter, supplemental medical information was supplied to Emory. On or about July 16, 1979, the bank urged Emory to pay the December 5, 1978, loan, stating that Toche had been a good customer of the bank.
On October 11, according to the testimony of Emory, he made the decision to pay the December 5, 1978, note installments subject to a limitation of $300.00 per month being placed on the total amount of the notes due each month on all three loans. This had the effect of reducing the payment made by the insurance company on the third loan from $123.58  the amount due each month to the bank, to $93.87 per month. This left the sum of $29.71 per month for Toche to pay on the December 5, 1978, installment loan.
Based upon the facts presented by this record  where the very onset of Mr. Toche's illness was traceable to the very day that he obtained the last loan, it can hardly be contended that the insurance company did not have an arguable reason for initially denying Toche's claim of benefits involving the third loan, even though it was ultimately determined that the benefits should be paid. Certainly, there is no element of aggression, insult, malice or gross negligence which would evince a ruthless disregard for the rights of Toche by his insurance company.
In appellee's brief, he states:
It is the contention of the Appellant that it acted in good faith and your Appellee agrees that the Appellant acted in good faith up to a point. The Appellant committed bad faith at that point in time when it realized that the disease of Toche did not come about on a specific date and when it elected to pay the claim of Toche but imposed a limitation which by the clear and unambiguous language of the policy had no right to impose. As stated, even after Appellant had decided to pay the claim of Toche, it then committed an additional wrongful and wanton act constituting gross negligence as it applied to Toche. Emory had testified ... that Toche had only one loan with an effective date after the commencement of the master policy. He was therefore not subject to the limitation as set forth in the master policy....
Assuming that the insurance company erroneously applied the $300.00 per month limitation on the amount of the total installments which it would pay on Mr. Toche's loan, this record does not indicate, nor does the appellee argue that this error was even brought to the attention of the insurance company until after suit was filed. At most, this appears to be no more than a clerical error or honest mistake on the part of the agent of the insurance company. There is nothing about this conduct which would warrant the imposition of punitive damages.
For the foregoing reasons, the judgment of the circuit court is affirmed as to actual damages in the amount of $1,094.65, but is reversed and judgment is rendered here for the defendant, Consolidated American Life Insurance Company, on the question of punitive damages.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
PATTERSON, C.J., SMITH and SUGG, P. JJ., and BROOM and ROY NOBLE LEE, JJ., concur.
*1307 BOWLING, J., dissents.
HAWKINS and DAN LEE, JJ., take no part.
BOWLING, Justice, dissenting:
In my opinion the question of punitive damages was properly submitted to the jury. There are some facts that need to be brought out that are not related in the majority opinion. Appellant company was engaged in selling what is commonly known as "credit life and disability insurance." It was handled in the following manner: the company issued a policy to the bank only with the bank being specifically named as the insured and the policyholder. In addition to this, the banker handling the selling of the credit life insurance was specifically licensed by the insurance department as an insurance salesman, although he admittedly acted in a dual purpose; that is, as agent both for the insurer [appellant herein] and the bank. Both the insurance company and the bank received part of the premiums collected. It is admitted that when appellee secured his loan, it was handled in the same way it had been handled in the past many years. Admittedly appellee was a good customer of the bank, as the record clearly reveals the only reason the claim was partially paid five months after claim was because of the business relationship between appellant insurance company and the bank. This was testified to positively by the appellant's agent.
According to the majority opinion, the appellant's claims manager had an "honest opinion that the cause of disability in all probability had its beginning prior to December 5, 1978." This is amazing to say the least. At the time this opinion was formed, the record is undisputed that the claims manager had reports from doctors who examined and treated appellee that stated there was no way for them to have known that appellee had cancer until January 19, 1979. He was treated for only cold and bronchitis prior to that time. Furthermore, according to the claims manager, the company had a full-time medical director, who was not consulted or shown any of the claim forms or reports and was not asked to give any medical advice to anyway contradict the reports of the treating physician.
When the licensed insurance salesman acting for appellant company and its policyholder, the bank, completed the application for and the actual preparation of the installment note on December 5, 1978, it is undisputed that the only mention of credit disability insurance was the appellant's agent asking appellee if he wished such insurance. Undisputedly, all appellee said was "handle it as you always have." Whereupon appellant's agent and the bank policyholder's agent added a full credit disability premium to the installment note, "as he always had done." Nothing whatever was mentioned as to appellee's health. He was not required to make any type of statement either written or oral pertaining to his health then or at anytime in the past. His health condition had nothing whatever to do with the loan or the credit disability insurance for which, as stated above, appellee was charged the full premium beginning the day the note was executed.
As hereinbefore stated, the insurance contract was between appellant insurance company and the bank. Appellee knew nothing whatever about its terms and was given no information whatever about its terms. This brings me to the glaring error in the majority opinion. Appellant's agent and the bank's agent, who was one and the same person, at the time the note was executed, charged appellee the full insurance premium for the entire amount of the note, knowing full well at that time, that in the event of disability, the company would not pay that amount. He knew, but appellee did not know, of the $300 limit in the policy. Appellee was forced to pay for something beginning that day that the agent knew he would not get.
With deference, the majority opinion slides over this situation by saying that this "appears to be no more than a clerical error or honest mistake." We have read this record several times and there is not one word or one indication whatever that the positive action of the agent in charging the *1308 full premium was an error. In this connection, it is important that no one with the bank, including the agent, testified. If an error had been made, would it not have been a simple matter for the banker and agent who dealt with Toche to have run down to the courthouse and said it was an error. The only defense witness, the claims manager from Jackson, made no indication of error in his testimony. If it had ever crossed the minds of appellant's management, the bank or their attorneys that an error had been committed, would that not have been set out in the pleadings? With deference, the majority is acting solely on supposition and speculation. In every jury case that is tried the court instructs the jury that its verdict cannot be based on supposition and speculation. How in the world can we now affirm that rule that has been in effect ever since there have been courts, and then decide an appeal here on supposition and speculation?
In my opinion the deliberate charging of the extra premium, when the agent knew the benefit would not be paid and without saying anything whatever to appellee, constituted a willful, deliberate and independent tort that required that the jury receive the punitive damages instruction. We have to bear in mind that what we are deciding here is whether or not the lower court was correct in instructing the jury that it "could" in its discretion return a verdict for punitive damages. There was no legal determination by the court that such damages were applicable.
I would affirm the punitive damage award and direct that a remittitur be entered because of its amount.
NOTES
[1] Since the opinion of Standard Life Insurance Company of Indiana v. Veal, supra, this Court has decided several cases involving the issue of punitive damages in insurance contracts. Punitive damages were allowed in the following: Travelers Indem. Co. v. Wetherbee, 368 So.2d 829 (Miss. 1979). Punitive damages were denied in the following: Bellefonte Ins. Co. v. Griffin, 358 So.2d 387 (Miss. 1978); Gulf Guaranty Life Ins. Co. v. Kelley, 389 So.2d 920 (Miss. 1980); State Farm Mut. Auto. Ins. Co. v. Roberts, 379 So.2d 321 (Miss. 1980); Aetna Cas. & Sur. Co. v. Steele, 373 So.2d 797 (Miss. 1979); New Hampshire Ins. Co. v. Smith, 357 So.2d 119 (Miss. 1978).