GRIFFIN, Justice,
for the Court:
This case, involving punitive damages for an insurer’s bad faith, comes to the Court from the Circuit Court of Smith County, where a jury awarded Stanley E. Maas and Kathy Maas $1,820 in actual damages and $100,000 in punitive damages. We affirm.
On October 1, 1984, Kathy Maas entered Smith County General Hospital for surgery. Her husband, Stanley E. Maas, an employee of Raleigh Forest Products, Inc., held family health insurance coverage from Blue Cross and Blue Shield of Mississippi, Inc. (Blue Cross), through his employer’s group plan.
On October 3,1984, Mary White, Raleigh Forest Products’ bookkeeper, paid the Oc *496 tober premium of $913.93 to Blue Cross. She also remitted a separate check for $127.77 as pre-payment for an additional employee. When Blue Cross then received an amount in excess of its invoice, since the additional employee was not yet listed, the matter was referred to the reconciliation department.
Meanwhile, on October 13, 1984, Stanley Maas quit Raleigh Forest Products. Blue Cross contends that it received a note from Raleigh Forest Products on October 16, 1984, informing it that Maas had quit. Although White denies that she penned the note, or that it originated from Raleigh Forest Products, she testified that she had sent Blue Cross a termination card on October 15,1984, removing Maas from the policy effective October 31, 1984.
On October 18, 1984, Virgie Davis, employed in Blue Cross’ membership service department, allegedly acting on the note, cancelled Maas’ coverage as of the “pay-to-date,” October 1, 1984, according to company procedure. That same day, the reconciliation department posted Raleigh Forest Products’ check for October, thus extending its insurance through October 31, 1984. Subsequently, when Blue Cross received Maas’ bills, they were rejected, since its records showed Maas’ coverage cancelled effective October 1, 1984.
In early November, Maas telephoned Blue Cross about his claim. According to Maas, Blue Cross told him that it would “check into it;” Maas though never received any response. Maas also contacted Michael Thornton, an employee of Raleigh Forest Products, who told him that he knew nothing about the claim.
Parenthetically, on October 29, 1984, when Raleigh Forest Products paid its November premium to Blue Cross, Maas’ coverage was extended another month, since, according to company procedure, the group was to pay the invoice listing Maas, and await a future credit. No credit was ever given, and Blue Cross now acknowledges Maas’ coverage through November 30, 1984.
On January 10, 1985, Maas filed suit against Blue Cross, asking $100,000 in actual damages and $5,000,000 in punitive damages. On January 14,1985, Blue Cross began an investigation into the matter, which took approximately two and one half weeks to complete. Also, in late January, Blue Cross received a bill, related to the October surgery, which Maas' doctor had not previously filed; Blue Cross rejected this bill, as well. The insurer contends that the claims department had not yet received notification that there was an error.
On March 11, 1985, Blue Cross tendered checks to Maas, totalling $1,766.40. In its answer, Blue Cross admitted its liability for this amount. At trial, Blue Cross employees readily conceded, “We made a mistake”.
On appeal, Blue Cross contends that the trial judge erred when he refused its motions for a directed verdict, judgment notwithstanding the verdict, and a new trial, since Blue Cross’ clerical error failed to justify either a punitive damages instruction or their award. Specifically, Blue Cross maintains that it investigated Maas’ coverage after he had filed suit, and remitted payment, once it had found the error.
In response, Maas argues that Blue Cross intentionally evaded payment on the claims, noting (1) the suspicious circumstances surrounding the note, which notified the insurer that Maas had quit, (2) the insurer’s failure to investigate the claim and report its findings, despite assurances to that effect, and (3) the insurer’s failure to tender payment until March 11, 1985, when the investigation, which revealed the claims’ validity, had concluded in late January.
Although punitive damages are not ordinarily recoverable in cases involving breach of contract, Aetna Casualty & Surety Co. v. Doleac Electric Co., Inc., 471 So.2d 325, 332 (Miss.1985), they are recoverable where the breach results from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an independent tort. Weems v. American Security Insurance Co., 486 So.2d 1222, 1226 (Miss.1986); Bankers Life & Casualty Co. v. Crenshaw, 483 So.2d 254, *497 269 (Miss.1985); Consolidated American Life Insurance Co. v. Toche, 410 So.2d 1303, 1304-05 (Miss.1982); Gulf Guaranty Life Insurance Co. v. Kelley, 389 So.2d 920, 922 (Miss.1980); Aetna Casualty & Surety Co. v. Steele, 373 So.2d 797, 801 (Miss.1979); Bellefonte Insurance Co. v. Griffin, 358 So.2d 387, 391 (Miss.1978); New Hampshire Insurance Co. v. Smith, 357 So.2d 119, 121 (Miss.1978); Lincoln National Life Insurance Co. v. Crews, 341 So.2d 1321, 1322 (Miss.1977); Progressive Casualty Insurance Co. v. Keys, 317 So.2d 396, 398 (Miss.1975). In these instances, they act to punish, and are to set an example, thereby discouraging others from similar behavior. Crenshaw, 483 So.2d at 268, State Farm Mutual Auto Insurance Co. v. Daughdrill, 474 So.2d 1048, 1052 (Miss.1985); Standard Life Insurance Co. of Indiana v. Veal, 354 So.2d 239, 247 (Miss.1977). As such, punitive damages are allowed only with caution and within narrow limits. Toche, 410 So.2d at 1304-05; Veal, 354 So.2d at 247.
Although a court will look for an arguable reason to justify the insurer’s failure to pay a contested claim in bad faith litigation, Mississippi Farm Bureau Mutual Insurance Co. v. Todd, 492 So.2d 919, 932 (Miss.1986); Aetna Casualty & Surety Co. v. Day, 487 So.2d 830, 834 (Miss.1986); Overstreet v. Allstate Insurance Co., 474 So.2d 572, 576 (Miss.1985), Blue Cross & Blue Shield of Mississippi, Inc. v. Campbell, 466 So.2d 833, 844 (Miss.1984); Reserve Life Insurance Co. v. McGee, 444 So.2d 803, 809 (Miss.1983); Kelly, 389 So. 2d at 923; Steele, 373 So.2d at 801-02, Veal, 354 So.2d at 248, punitive damages are not necessarily “mandated by the absence of an ‘arguable reason’,” since their “assessment is no different in ‘bad faith’ cases than in other punitive damages cases.” State Farm Fire & Casualty Co. v. Simpson, 477 So.2d 242, 250 (Miss.1985). See also, Pioneer Life Insurance Co. v. Moss, 513 So.2d 927, 930, (Miss.1987); Todd, 492 So.2d at 932-33; Day, 487 So.2d at 832-33; Weems, 486 So.2d at 1226-27; Southern United Life Insurance Co. v. Caves, 481 So.2d 764, 769 (Miss.1985). In Scott v. Transport Indemnity Co., 513 So. 2d 889, 896 (Miss.1987), Justice Robertson noted this distinction:
Veal says that the presence of an arguable reason for failure to pay a claim establishes a defense to the insurer and insulates it from a bad faith refusal tort judgment. But the converse does not follow. The absence of an “arguable reason” does not necessarily establish that the insurer acted with malice or with gross negligence or reckless disregard for the rights of others.
Indeed, the Court has held that clerical errors and other honest mistakes fail to justify punitive damages, despite the lack of an arguable reason to deny the claim. Moss, 513 So.2d at p. 930; Toche, 410 So.2d at 1305. See also, Todd, 492 So.2d at 933; Employers Mutual Casualty Co. v. Tompkins, 490 So.2d 897, 903 (Miss.1986); Day, 487 So.2d at 832-33; Weems, 486 So.2d at 1227; Caves, 481 So.2d at 769; Simpson, 477 So.2d at 250. For example, in Toche, 410 So.2d at 1306, the Court reversed an award of punitive damages, finding “no more than a clerical error or honest mistake on the part of the agent of the insurance company,” who mistakenly determined that the claimant’s lung cancer was a pre-existing condition, precluding payment. See also, Moss, 513 So.2d at p. 930.
Likewise, Blue Cross maintains that its admitted error was merely the result of an oversight, wholly insufficient to justify the award of punitive damages. Yet, the jury heard testimony that (1) Raleigh Forest Products timely paid its premium to Blue Cross, (2) upon receipt of a check for the amount of its invoice, Blue Cross forwarded the invoice to the reconciliation department, though immediately cashing the check, (3) Blue Cross held the invoice for ten days prior to posting Raleigh Forest Products’ payment, (4) Vergie Davis allegedly acted pursuant to the note, when can-celling Maas, though she has no recollection of the note, (5) Mary White, Raleigh Forest Products’ bookkeeper and co-owner, denied that the company had sent the note, upon which Davis allegedly acted, (6) Maas never received an answer from Blue Cross, following his claim’s denial, though assured *498 of an investigation and response, (7) Blue Cross denied a doctor’s claim on Maas, related to the surgery, approximately three weeks after he had filed suit; significantly, the denial occurred after Blue Cross’ investigation had determined that the insurer wrongfully terminated coverage, and (8) Blue Cross failed to remit payment until March 11, 1985, approximately six weeks after the investigation had found that the insurer improperly denied the original claim.
At trial, the circuit judge granted Instruction P-13, which stated that the plaintiffs “must prove by a preponderance of the evidence that the actions complained of by the plaintiffs were of a wanton, malicious or fraudulent nature, or if the actions complained of by the plaintiffs were committed by gross negligence indicative of a wanton and willful disregard of the rights of others.” On these facts, the award of punitive damages was consistent with the instruction and our law.
Finding no error, we affirm.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and ZUCCARO, JJ., concur.