# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 93-CA-00491-SCT

*JAN COSSITT*

*v.*

*ALFA INSURANCE CORPORATION FORMERLY KNOWN AS FEDERATED GUARANTY MUTUAL INSURANCE COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/02/93 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WAYNE E. FERRELL, JR. |
| | KARLA J. PIERCE |
| ATTORNEYS FOR APPELLEE: | CHRIS J. WALKER |
| | AL NUZZO |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 9/10/98 |
| MOTION FOR REHEARING FILED: | 10/15/98 |
| MANDATE ISSUED: | 12/17/98 |

**EN BANC.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. On February 4, 1986, Federated Guaranty Mutual Insurance Company, now Alfa Insurance Company ("Alfa"), filed a declaratory judgment action to determine its obligations to Cossitt under its policy of automobile insurance, particularly with regard to its obligations concerning the policy's uninsured motorist provisions. On February 27, 1986, Cossitt filed her Answer and Counter-Claim against Alfa alleging she was entitled to the total amount of medical expenses incurred by her, and a sum equal to the uninsured motorist coverage under said policy, and further sought to collect punitive damages alleging that Alfa failed to act in good faith.

¶2. The trial court granted Alfa's Motion for Summary Judgment. The court found that there was no evidence of any acts of bad faith in the handling of Cossitt's claim for both medical and uninsured motorist coverage by Alfa, and further found that Cossitt was not entitled to uninsured motorist

benefits.

¶3. Cossitt appealed this order to the Court, and the Court affirmed the trial court's ruling that Cossitt was not entitled to uninsured motorist benefits. The Court further affirmed the dismissal of Cossitt's claim for alleged bad faith for failure to pay uninsured motorist coverage. However, this Court reversed the trial court's findings concerning Cossitt's claim for punitive damages relevant to the medical payments coverage under the policy, and remanded the case to the trial court "for the limited purpose of allowing the additional development of facts surrounding Federated Guaranty's failure to pay medical benefits to [Jan] Cossitt following November 1, 1985." *Cossitt v. Federated Guar. Mut. Ins. Co.*, 541 So. 2d 436, 445 (Miss. 1989) (*Cossitt I*).

¶4. After remand the parties conducted additional discovery. Alfa moved for a protective order based on Cossitt's requests for discovery. Cossitt filed a motion to amend her answer and counterclaim seeking all medical payments to which she was entitled under the policy of insurance and exemplary and punitive damages for Alfa's alleged wrongful refusal to pay such benefits. Cossitt further claimed that she was entitled to $10,000.00 under the uninsured motorist provisions of Alfa's policy as a result of the coverage of the church's bus policy of insurance. Also, Cossitt demanded exemplary and punitive damages alleging Alfa wrongfully refused to tender the underinsured motorist and medical benefits.

¶5. The Honorable James Graves, Circuit Court judge, ruled that Cossitt's Motion exceeded the scope of this Court's mandate and further ordered that Cossitt would be "prohibited from conducting discovery, introducing evidence at any hearing and introducing into evidence at the trial any evidence not directly related to the development of facts surrounding Federated Guaranty's failure to pay medical benefits to Cossitt."

¶6. Alfa filed a Supplemental Motion for Summary Judgment. On April 1, 1993, after a hearing held on February 25, 1993, Judge Graves entered an order granting summary judgment in favor of Alfa on the issue of Alfa's alleged bad faith refusal to pay at least $1,000.00 in medical benefits. The court specifically found that Cossitt was entitled to $1,000.00 of medical benefits. Cossitt appeals these two orders.

## MOTION PASSED FOR

## CONSIDERATION

¶7. Between the hearing and ruling on February 25, 1993, and April 1, 1993, the date Judge Graves entered his Order, Cossitt filed a Motion for Reconsideration of Order Granting Plaintiff's Summary Judgment and a document entitled "Second Response to Plaintiff's Motion for Summary Judgment" with exhibits attached. Among the exhibits were the deposition of Harold Cain, district claims manager of Federated Guaranty, deposition of Charles Wilbanks, Cossitt's former attorney, and correspondence between Alfa and Wilbanks. Both depositions were taken in 1991, and the correspondence is between 1985-89.

¶8. Alfa has filed a motion to prohibit any consideration of these issues by the Court, as the record on appeal is devoid of any evidence that a hearing on Cossitt's motion was ever conducted. Alfa argues that, because there is not an order in the record either granting or denying Cossitt's Motion for

Reconsideration, the issues raised in the Motion are presumed waived or abandoned. *See* 60 C.J.S. *Motions and Orders* § 42 (1969). They also cite in support Miss. Sup. Ct. R[1]. 10(e) which provides that the parties by stipulation, or the trial court, either before or after the record is transmitted to this court, or this court on proper motion may order that misstatements in the record be corrected. Furthermore, pursuant to 10(f), nothing in Rule 10 shall be construed as empowering the parties to add to or subtract from the record except insofar as may be necessary to convey a fair, accurate and complete account of what transpired in the trial court with respect to those issues that are the basis of appeal. Alfa asserts that because Cossitt's Response and corresponding exhibits were not introduced before or during the hearing before Judge Graves, they violate 10(f) and should be excluded from consideration in the appeal.

¶9. Alfa quotes Rule 56(c) of the M.R.C.P. in pertinent part as follows:

> . . .The [Summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions <u>on file</u>, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (emphasis added)

Alfa argues that the depositions of Cain and Wilbanks and the correspondence attached to Cossitt's Response were not "on file" on February 25, 1993, the date of the hearing before Judge Graves, because they were not filed until March 12, 1993. Thus, these documents should be stricken from the record along with all arguments in Cossitt's brief relating thereto.

¶10. Cossitt argues that under Miss. Sup. Ct. R. 10(b)(5), Alfa had an opportunity to and did review the record in October, 1993 and make the corrections which it deemed appropriate. That rule provides that the appellee is allowed seven days to review the record and at that time may append corrections, which if disputed shall be determined by the trial court to be proper or not. Miss. Sup. Ct. R. 10 (1994). This is Alfa's third attempt to modify the record. Cossitt argues that an excessive amount of time has passed since this appeal was filed and briefing is still incomplete due to Alfa's continuous filings to modify the record which it should have addressed long ago.

¶11. Cossitt also argues that the issues raised in her Second Response to Plaintiff's Motion for Summary Judgment were raised by counsel for Cossitt in the hearing on the Motion, and the documents attached were a part of the pleadings on file at said hearing and/or considered by the court prior to the entry of the Orders granting summary judgment in favor of Alfa.

¶12. Alfa makes a great deal out of the fact that the attachments to Cossitt's Response were not "on file" with the court and thus not before Judge Graves at the time of his ruling. Therefore, they should not be a part of the record. The emphasis by Alfa on the words "on file" in Rule 56(c) is misplaced. The Rule separates the different documents to be considered by commas and "on file" refers only to admissions. *See* II James W. Moore, Moore's Federal Practice, § 56.11[6] (3d ed. 1998) (discussing why admissions must be "on file" under F.R.C.P. 56(c)). However, the record reflects that Judge Graves did not consider any of those documents attached to the Response in his ruling. Furthermore, there was no disposition of the Motion by Judge Graves. "[T]he affirmative duty rests upon the party filing the motion to follow up his action by bringing it to the attention of the trial court." ***Cossitt I,*** 541 So. 2d at 446. A motion that is not ruled upon is presumed abandoned. *See* 60 C.J.S. *Motions & Orders* § 42 (1969); ***Prather v. McGrady***, 634 N.E.2d 299, 303 (Ill. App. Ct. 1994).

¶13. Alfa's Motion is well taken. There is no reference at the hearing to Cain's or Wilbanks's deposition or the correspondence nor are they among the exhibits introduced at the hearing. Nor did Cossitt submit affidavits in response. Cossitt did submit supplemental responses to interrogatories at the hearing. However, these are nowhere to be found in the record on appeal. Alfa asserts that the interrogatories referred to at the hearing are improper as they are not signed by Cossitt as required by M.R.C.P. 33 and are signed only by Cossitt's attorney. They further assert that these interrogatories were not under oath. The interrogatories are not in the record, and thus the Court cannot review them. Cossitt is appealing the order of the trial court, and so, she has the burden of seeing that the record before the Court contains all data essential to matters relied upon for reversal. ***Shelton v. Kindred***, 279 So. 2d 642, 644 (Miss. 1973)(Smith, J.).

¶14. The documents in Cossitt's Response were not considered at the hearing. Judge Graves did not rule on the Response and it was not addressed in the entered Order on April 1, 1993. In fact the entered Order was identical to Judge Graves's ruling at trial. Therefore, the addition of Cossitt's Response in the Motion is not a fair, accurate and complete account of what transpired in the trial court with respect to those issues. Alfa's Second Motion to Correct or Modify the Record is granted and all arguments referring to the documents contained in Cossitt's Response are stricken.

## STATEMENT OF THE ISSUES

I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF FEDERATED GUARANTY.

A. The Trial Court Erred in Granting Summary Judgment in Favor of Federated Guaranty on the Issue of Bad Faith in Light of Evidence that the Tender of The Undisputed Amount of Medical Pay Benefits was Unreasonably Delayed

B. The Trial Court Erred in Granting Summary Judgment on the Issue of the Limit of Medical Payments Coverage Under the Policy.

II. THE TRIAL COURT ERRED IN REJECTING COSSITT'S CLAIM FOR PREJUDGMENT INTEREST.

III. THE TRIAL COURT ERRED IN DENYING COSSITT'S MOTION FOR LEAVE TO AMEND ANSWER AND COUNTERCLAIM TO ASSERT AN ADDITIONAL BASIS FOR INVOKING UNINSURED MOTORIST COVERAGE AND TO ASSERT THAT FEDERATED GUARANTY MAINTAINED AN ILLEGAL PROVISION IN ITS POLICY, AND IN PRECLUDING COSSITT FROM CONDUCTING DISCOVERY ON THIS ISSUE.

## STATEMENT OF THE FACTS

¶15. This is the second time this case has been before the Court. Cossitt, Odom McDaniel, and Joseph Q. White were struck by a vehicle owned and operated by Lester Davis. Cossitt sustained in excess of $10,000.00 in bodily injury. The other two claimants exhausted the tortfeasor's liability, and this action arose from Cossitt's claim against her own uninsured motorist policy with Alfa. The Court affirmed in ***Cossitt* I** the trial court's grant of summary judgment to Alfa on all issues except one:

Alfa's failure to make medical payments under the policy. The Court reversed and remanded for a more complete development of facts surrounding Alfa's failure to pay at least $1,000.00 in medical benefits. *Cossitt I*, 541 So. 2d at 446.

¶16. The policy issued to Cossitt in pertinent part provides:

Coverage C--Medical Payments.

To pay the reasonable expense of necessary medical . . . services . . . incurred within one year from date of accident to or for:

* * *

**Limits of Liability** (1) **Coverages** A, B and **C.**

**The limits of bodily injury liability stated in the declarations**as applicable to "each person" **is the limit of the Company's liability** for all damages . . .

**Coverage C-1**-Major Medical Payments.

**To pay the medical expenses as defined** and set forth under Coverage C incurred **up to but not exceeding $5,000.00**, to or for each person who sustains bodily injury in any one accident, subject to all the provisions of Coverage C, and subject to the limits of liability as hereinafter set forth.

**Limit of Liability-Coverage C-1**

**The Company's limit of liability shall not exceed . . . $5,000.00** for all expenses incurred for each person who sustains bodily injury in any one accident.

**Coverage C-2-AUTO-matic PAY.**

**Medical Expense Benefits**

To pay all reasonable expenses resulting from bodily injury . . . for necessary medical . . . services, **subject to the limits stated below under Limits of Liability.**

* * *

**Limits of Liability-The limit of liability stated in the Declarations shall be the limit of the company's liability under coverage C-2** . . .

The declaration page applicable at the time of the incident indicates that medical coverage is limited to $1,000.00.

¶17. In support of its Supplemental Motion for Summary Judgment and Notice of Hearing, Alfa submitted the letter of its former attorney, Bill Patterson, affirming that Patterson on behalf of Alfa twice tendered Cossitt's former attorney, Wilbanks, $1,000.00 for payment of her med-pay benefits.

The correspondence between Patterson and Wilbanks is attached as exhibits to the motion. Wilbanks refused to negotiate the check unless it was to cover the "undisputed" amount only.

¶18. In the record there is no response by Cossitt to the summary judgment until the hearing before Judge Graves.

# A N A L Y S I S

## I. DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF FEDERATED GUARANTY?

### A. Did the Trial Court Err in Granting Summary Judgment in Favor of Federated Guaranty on the Issue of Bad Faith in Light of Evidence that The Tender of the Undisputed Amount of Medical Pay Benefits was Unreasonably Delayed?

¶19. The Court reviews de novo a trial court's grant of summary judgment. *Short v. Columbus Rubber & Gasket Co.,* 535 So. 2d 61, 63 (Miss. 1988). Evidentiary matters are judged in the light most favorable to the nonmoving party. *Palmer v. Biloxi Regional Med. Ctr., Inc.*, 564 So. 2d 1346, 1354 (Miss. 1990). If any issues of fact are triable, the trial court's decision to grant summary judgment will be reversed.

¶20. Alfa has admitted in its brief owing Cossitt $1,000 for medical payments as stated on the declaration page of the insurance policy. Cossitt contends that Alfa owes $5,000 per the language of the policy. Alfa tendered Cossitt $1,000.00 on three occasions (March 25, 1987, March 10, 1989, April 13, 1989) to cover her medical payments under the policy. Cossitt responded that she would not negotiate the check unless the check was to cover the "undisputed amount" only. The trial court ordered Alfa to pay $1,000 in its Order Granting Summary Judgment. Cossitt argues that the refusal to pay the $1,000 unconditionally constituted bad faith on the part of Alfa.

¶21. The trial court found that Cossitt's claim for med-pay benefits was never denied by Alfa; "rather, a legitimate pocketbook dispute existed between the parties as to the amount of med-pay benefits available." The trial court further stated that based on the policy language and the declarations page, Alfa had "a legitimate and arguable basis in law for tendering Cossitt $1,000 in med-pay benefits and that Cossitt's refusal to accept the $1,000 cannot constitute bad faith" on Alfa's part. The trial court held that Alfa's conduct did not rise to the level of a "heightened" tort necessary to prove bad faith and recover punitive damages. Thus, the court held that Alfa was entitled to judgment as a matter of law.

¶22. Cossitt contends that the trial court erred in its determination. Specifically, Cossitt argues that while there may have been a legitimate reason for Alfa to dispute Cossitt's position that she was entitled to $5,000 rather than $1,000 in medical payment benefits, there is no justification or arguable reason for Alfa's refusal and delay to pay the undisputed amount after more than seven years of demands.

¶23. In support of her position Cossitt cites two Louisiana cases where the appellate courts in Louisiana stated that the failure of the insurance companies to pay the claims of the insureds within 60 days of the receipt of satisfactory proof of loss was arbitrary and capricious as a matter of law.

*Marcel v. Allstate Ins. Co.*, 536 So. 2d 632 (La. Ct. App. 1988), *Hart v. Allstate Ins. Co.*, 437 So. 2d 823 (La. 1983). In *Marcel* the court noted that attorneys' fees and penalties could have been avoided by the unconditional tender of a reasonable amount when a disagreement existed over the total amount owed. *Marcel*, 536 So. 2d at 637. These cases are not particularly applicable to the case at hand, because they centered on a Louisiana statute that required an uninsured motorist carrier to pay the claim of its insured within sixty days of receipt of satisfactory proof of loss. Nevertheless, Cossitt asserts that they are instructive on the standard of conduct of an insurance company in delaying or failing to pay legitimate claims of its insureds.

¶24. Cossitt also cites the Court's decision in **Blue Cross & Blue Shield of Mississippi, Inc. v. Maas**, 516 So. 2d 495 (Miss. 1987). Maas was seeking coverage under her husband's employer's group plan. Weeks later her husband quit, and Blue Cross received notice to terminate his insurance October 31, 1984. Blue Cross erroneously canceled the plaintiff's coverage effective October 1, 1984, and rejected Maas's claims on her hospital bills. *Id.* at 495-96. Two months after the plaintiffs filed suit, Blue Cross tendered medical benefits to the plaintiffs and admitted its liability for the amount. The Court affirmed the jury award of actual and punitive damages noting especially Blue Cross's failure to investigate and respond after being contacted by the plaintiffs and its failure to remit payment until six weeks after its investigation revealed that the original claim had been improperly denied. *Id.* at 497-98.

¶25. Cossitt submits that Alfa's conduct is even more egregious than those acts held to justify an award of punitive damages in *Maas*. Her argument is based on the 7 ½ year delay as opposed to the six week delay in *Maas*.

¶26. Cossitt also argues this Court's decision in **Standard Life Ins. Co. of Indiana v. Veal**, 354 So. 2d 239 (Miss. 1977). In that case the Court discussed the propriety of awarding punitive damages stating that "[i]f an insurance company could not be subjected to punitive damages it could intentionally and unreasonably refuse payment of a legitimate claim with veritable impunity." *Id.* at 248. The Court recognized that if an insurance company has a legitimate or an arguable reason for failing to pay a claim, punitive damages will not lie. *Id*.

¶27. Cossitt argues that there is no legitimate reason to unconditionally withhold the $1,000. She asserts that if an insurance company is permitted to withhold payments of sums which it admits owing, with the obvious goal of forcing its insured to withdraw her claims for additional coverage, there is no motivation for insurance companies to promptly pay claims.

¶28. Alfa argues that the trial court did not err in granting summary judgment on this point. It argues that M.R.C.P. 56 states that a summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Further, when such a motion is made, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If there is not such a response, summary judgment, if appropriate, shall be entered against the adverse party. Miss. R. Civ. P. 56(e). Alfa contends that Cossitt has failed to meet this burden since she failed to respond to Alfa's Motion for Summary Judgment and, therefore, failed to set forth specific facts

showing that there is a genuine issue for trial on the bad faith allegations.

¶29. Alfa argues that it attached the affidavit of Bill Patterson to its Motion, and Cossitt presented no affidavit in rebuttal nor was there testimony in opposition at the hearing. The depositions of Cain and Wilbanks were not produced until after Judge Graves's ruling from the bench. Alfa asserts that Cossitt cannot rely on unsworn allegations in the pleadings or on arguments and assertions in the briefs or legal memorandum to defeat summary judgment. *Magee v. Transcontinental Gas Pipeline Corp.*, 551 So. 2d 182, 186 (Miss. 1989). Alfa argues that since the remand of this case, no additional sworn facts were presented to Judge Graves prior to the hearing.

¶30. Alfa asserts that because the foundation of Cossitt's arguments on appeal (testimony of Alfa claims manager Cain that he saw no reason not to pay the $1,000) was not before Judge Graves, the arguments in her brief are groundless and must be precluded on appeal. Thus, Judge Graves should be affirmed.

¶31. Alternatively, Alfa argues that Cossitt has not shown that Alfa acted with (1) malice or (2) gross negligence or reckless disregard for the rights of others. *Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290, 293 (Miss. 1992). Furthermore, Alfa notes that it is the trial court's responsibility to review the evidence before it in order to ascertain whether there is a legitimate or arguable reason not to pay the claim and if not submit the issue of punitive damages to the jury. *Veasley* defined an arguable reason as "'nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to heightened level of an independent tort.'" *Id.* (quoting *Pioneer Life Ins. Co. of Illinois v. Moss,* 513 So. 2d 927, 930 (Miss. 1987)). Alfa argues that it never denied Cossitt's claim, because it tendered several checks to Cossitt.

¶32. Alfa also notes a case concerning a similar situation in a dispute over an automobile policy. *State Farm Mut. Auto. Ins. Co. v. Roberts*, 379 So. 2d 321 (Miss. 1980). In *Roberts* the dispute arose from a totally demolished automobile covered by State Farm. At the time of the accident, the vehicle was worth $3,700 and Roberts owed $4,700 on it. State Farm offered to pay their contractual obligations under the policy (the actual cash value) and Roberts refused this settlement. Roberts sued for the amount owed on the car and sought punitive damages. The Court held:

> . . .A research of the record reveals nothing other than a legitimate pocketbook dispute between the parties as to the amount that was due for the demolished automobile, one claiming the sum owed the bank on the automobile and the other admitting coverage in the amount of its policy, specifically, the actual cash value of the automobile. In our judgment, these differences of opinion did not rise to the level of wanton, gross or intentional conduct in the nature of an independent tort.

*Id.* at 322.

¶33. *Roberts* is very similar to the situation at hand. Cossitt says she is owed $5,000; Alfa says $1,000. While it seems that Alfa could easily unconditionally tender the $1,000 (as State Farm could have tendered the $3,700), its actions appear to be more over a dispute over the amount owed and do not rise to the level of an independent tort as articulated in *Roberts.*

¶34. Cossitt was not diligent in her response to the Motion for Summary Judgment with specific

facts. Based on the record before Judge Graves at the time of his ruling, summary judgment was appropriate.

¶35. Alternatively, this case is nothing more than a pocketbook dispute and does not rise to the heightened level of an independent tort. Summary judgment in favor of Alfa on the issue of bad faith is affirmed.

B. Did the Trial Court Err in Granting Summary Judgment on the Issue of the Limit of Medical Payments Coverage Under the Policy?

¶36. Cossitt argues that the trial court erred in determining as a matter of law that the policy in question was unambiguous and provided only $1,000.00 in medical payments. The policy contains three different coverages for medical expenses: "Coverage C-Medical Payments," "Coverage C-1-Major Medical Payments," and "Coverage C-2-AUTO-Matic Payments." Coverage C-Medical Payments specifically provides that the limit of liability for that coverage of medical expenses is stated in the declaration page. Cossitt's declaration page stated she had a $1,000.00 medical limit. Cossitt asserts, though, that the policy is ambiguous. Coverage C-1 Major Medical Payments provides for payment of medical expenses incurred up to $5,000.00 and is subject only to limits of liability of $1,000.00 for funeral expenses and $5,000.00 for all other expenses. Because Coverage C-1-Major Medical Payments does not state that it is limited to the limits of liability set forth in the declarations page and does provide limits of $5,000.00, Cossitt asserts that she is entitled to the $5,000.00 liability limits under Coverage C-1. She argues that at the very least the policy is ambiguous. Cossitt notes that the Court has held that any ambiguities in insurance provisions are to be construed in favor of the injured insured motorist. *Atlanta Cas. Co. v. Payne*, 603 So. 2d 343, 346 (Miss. 1992)(citing *Commercial Union Ins. Co. v. Dairyland Ins. Co.*, 584 So. 2d 405, 408 (Miss. 1991)).

¶37. In support of her position, Cossitt also refers the Court to *Government Employees Ins. Co. v. Brown*, 446 So. 2d 1002 (Miss. 1984). *Brown* concerned an issue certified by the Fifth Circuit as to whether the language contained in the "limits of liability" clause in the uninsured motorist provisions of an automobile policy was sufficiently clear and unambiguous to prevent the stacking of uninsured motorist coverage where separate premiums were charged for more than one vehicle under a single policy. *Id.* at 1003. The policy contained a provision limiting liability for uninsured motorist coverage to the amount stated in the declarations page as applicable to each person ($10,000.00), regardless of the number of automobiles to which the policy applied. *Id.* at 1004-05. The declarations page, however, described three vehicles owned by the parties and covered under the single policy with separate premiums charged for each automobile. *Id.* at 1005.

¶38. The Court held that the policy language under the "limits of liability" clause, when read together with the declarations page, was ambiguous and void. "[W]hile the language within the 'limits of liability' clause is clear and unambiguous as to what is intended, when read together with the declaration sheet it becomes unclear and ambiguous." *Id*. at 1006. Cossitt argues the limits of liability clause contained in Coverage C-1-Major Medical Payments conflicts with the declaration page. Secondly, the declarations page itself is ambiguous, given that it does not differentiate between Coverages C, C-1 and C-2, but only states that "Medical" coverage is limited to $1,000.00.

¶39. Alfa argues that Cossitt ignores the language in the initial paragraph of Coverage C-1 which makes the agreement "subject to all of the provisions of Coverage C . . .". Included under Coverage

C is the limits of liability which clearly states that such limits are as stated on the declaration page. In this case, the limits of med-pay benefits on the declaration page is $1,000.00.

¶40. Alfa's argument seems to be a stretch. If the limit of all of the coverages listed in the policy is what is on the declaration page, then it would be quite pointless to put more limiting language in the policy under Coverage C-1. Furthermore, the limiting language Alfa refers to is surrounded by language that negates the $1,000.00 limit argument. Specifically, the full sentence states, "[t]o pay the medical expenses as defined and set forth under Coverage C incurred up to but not exceeding $5,000, to or for each person who sustains bodily injury in any one accident, **subject to all the provisions of Coverage C, and subject to the limits of liability as hereinafter set forth**." (emphasis added). To say that Coverage C-1 is subject to the liability in the declaration page as required by Coverage C when it clearly says it is subject to the limits of liability "as hereinafter set forth" is nonsensical. Had the declarations page stated that Cossitt was subject to Coverage C med-pay benefits, there would be no conflict. The policy, however, states only medical limits of $1,000 for the premium listed. There is no indication of how they arrived at this limit in terms of which coverage Cossitt had. In fact the declarations page states that "[t]he limit of the Company's liability against each such coverage shall be as stated herein **subject to all terms of the policy having reference thereto**." (emphasis added) There may very well be proof that the agent told Cossitt that if she was paying a certain premium she would only be entitled to Coverage C, however, that is not in the record. At the very least there is a genuine issue of material fact as to whether Alfa is liable for $5,000 coverage, and the trial court erred by granting summary judgment on this point. The trial court is reversed on this point, and this issue is remanded for a trial on the merits.

## II. DID THE TRIAL COURT ERR BY FAILING TO GRANT PREJUDGMENT INTEREST?

¶41. The trial court ordered Alfa to pay Cossitt the sum of $1,000. On remand from *Cossitt* **I**, Cossitt had claimed she was entitled to an award of prejudgment interest on the medical benefits to which she was entitled to recover. Cossitt submits that the refusal to grant interest is reversible error.

¶42. In support of her position, Cossitt cites the general rule that in actions for breach of a contract of insurance, the insured is entitled to prejudgment interest on the amount of benefits which were withheld by the insurer after payment was due. *State Farm Mut. Auto. Ins. Co. v. Bishop*, 329 So. 2d 670, 673 (Miss. 1976). The only exception to this rule applies when the amount due the insured is uncertain or unliquidated. Cossitt claims that this exception does not apply since Alfa admits owing the sum of $1,000 as of November 1, 1985.

¶43. Alfa asserts that Cossitt is not entitled to prejudgment interest based on *Simpson v. State Farm Fire and Casualty Co.*, 564 So. 2d 1374, 1381 (Miss. 1990). Alfa appears to have the supporting law in Simpson. There, the Court held that "[**t]he insured must include a proper demand or request for prejudgment interest**, including from when it is allegedly due, **in the pleadings**. *Id.* at 1380-81 (citing *Maryland Cas. Co. v. Legg*, 247 So. 2d 812 (Miss. 1971)) (emphasis added). Because Cossitt's Answer and Counterclaim failed to include such a demand, Alfa asserts that the trial court did not err in its award to Cossitt. Cossitt makes no response to this argument in her Reply Brief. (Cossitt did claim she was entitled to prejudgment interest in her attempt to amend her answer. However, the trial court denied her motion based on this Court's limited inquiry on remand.)

¶44. Cossitt's request for prejudgment interest is not in the pleadings. Therefore, she is not entitled to such an award per this Court's holding in *Simpson*. Accordingly, the trial court's denial of prejudgment interest is affirmed.

### III. DID THE TRIAL COURT ERR IN DENYING COSSITT'S MOTION FOR LEAVE TO AMEND ANSWER AND COUNTERCLAIM TO ASSERT AN ADDITIONAL BASIS FOR INVOKING UNINSURED MOTORIST COVERAGE AND TO ASSERT THAT ALFA MAINTAINED AN ILLEGAL PROVISION IN ITS POLICY, AND IN PRECLUDING COSSITT FROM CONDUCTING DISCOVERY ON THIS ISSUE?

¶45. On remand, Cossitt attempted to amend her Answer and Counterclaim asserting an additional basis for invoking uninsured motorist coverage and to assert that Alfa maintained an illegal provision in its policy. In *Cossitt I* the Court found that Cossitt was not entitled to uninsured motorist benefits under her coverage. *Cossitt I*, 541 So. 2d at 443.

¶46. The trial court denied Cossitt's motion to amend, holding that this Court's mandate in *Cossitt* **I** limited the trial court's inquiry on remand.

¶47. Cossitt recognizes the law of the case doctrine in Mississippi:

> The doctrine of the law of the case is similar to that of former adjudication, relates entirely to questions of law, and is confined in its operation to subsequent proceedings in the case. Whatever is once established as the controlling legal rule of decision, between the same parties in the same case, continues to be the law of the case, so long as there is a similarity of facts. This principle expresses the practice of courts generally to refuse to reopen what has previously been decided. It is founded on public policy and the interests of orderly and consistent judicial procedure.

*Simpson v. State Farm Fire and Cas. Co.*, 564 So. 2d 1374, 1376 (Miss. 1990) (quoting *Mississippi College v. May,* 241 Miss. 359, 366, 128 So. 2d 557, 558 (1961)). However, she argues the following exception as applicable to her case. "[I]f the facts are different so that the principles of law announced on the first appeal are not applicable, as where there are material changes in the evidence, pleadings or findings, a prior decision is not conclusive upon questions submitted on the subsequent appeal." Cossitt asserts that her amendments are based on significantly different theories.

¶48. Her amendment as to the uninsured motorist theory was to stack the coverage for the church bus--in which the victims were riding--with her coverage to make the tortfeasor an uninsured motorist. In *Cossitt I* she argued that she was entitled to uninsured motorist coverage under her policy with Alfa, because the limits of the tortfeasor's coverage ($20,000/accident) were exhausted by the other victims, thus, the tortfeasor was underinsured. *Cossitt I*, 541 So. 2d at 439-43.

¶49. This amendment does not escape the law of the case doctrine. No material changes in the evidence, pleadings or findings have materially affected the facts so as to change the principles of law. While Cossitt's theory as to how the tortfeasor is an underinsured motorist may be different, the facts simply are not. The law of the case dealing with uninsured motorist coverage was conclusive in *Cossitt I*, and the trial court was correct in so ruling.

¶50. Cossitt argues that the second amendment-the alleged illegal provision-is not even remotely related to any of the issues vested in the first appeal and would not violate any of the principles announced therein. In support, she cites *Poole v. McCarty*, 233 Miss. 724, 728, 103 So. 2d 922, 924 (1958), where the Court ruled that proposed amendments that did not attempt to present the same matter which was before the Court on the original appeal or to try to contravene the principles announced by the Court in the case did not run counter to the law of the case.

¶51. Alfa argues that the mandate in *Cossitt I* bars consideration of either of these amendments. The mandate in pertinent part states:

> . . . The judgment of the lower court granting summary judgment in favor of [Alfa] is affirmed on all issues except [Alfa's] failure to make medical benefit payments after the condition precedent to its duty to pay was performed on November 1, 1985. As to this issue, we reverse and remand to allow for a more complete development of facts surrounding [Alfa's] failure to pay at least $1,000.00 in medical benefits.

*Cossitt I*, 541 So. 2d at 446.

¶52. The *Poole* case states that the chancellor has full power to allow amendments to the pleadings as he did before the decree appealed from was rendered provided the amendment does not run counter to the law of the case. Thus, the standard of review for the allowance of amendments to the pleadings is applicable. The Court has stated that it will reverse a judge's decision not to amend pleadings when it is evident the trial court has abused its discretion. *Knotts v. Hassell*, 659 So. 2d 886, 889 (Miss. 1995).

¶53. Because the mandate of the Court in *Cossitt I* was very specific in its inquiry, the trial court did not abuse its discretion by denying this amendment. The trial court's denial of the Motion to Amend the Answer and Counterclaim is affirmed.

## CONCLUSION

¶54. Based on the foregoing analysis, the trial court is affirmed on all issues except I(b), the amount of medical payments owed Cossitt by Alfa. This issue amounts to a factual dispute and is remanded on the basis that summary judgment was not appropriate.

¶55. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**PRATHER, C.J., SMITH AND MILLS, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. SULLIVAN, P.J., DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY BANKS AND ROBERTS, JJ. McRAE AND WALLER, JJ., NOT PARTICIPATING.**

**BANKS, JUSTICE, DISSENTING:**

¶56. In my view, the record and the original opinion for the Court in *Cossitt v. Federated Guaranty Mutual Insurance Co.*, 541 So. 2d 436 (Miss. 1989) compel the conclusion that the trial court erred in granting summary judgment on the issue of bad faith on the medical pay claim. Accordingly, I dissent.

¶57. The trial court came to the conclusion that Federated tendered $1,000 on three occasions and that it had an arguable basis for tendering that amount. The question put by this Court in its 1989 opinion was why Federated did not tender the $1,000 during the period from November 1, 1985, when the medical bills were submitted, until March 25, 1987, at the point where Federated got summary judgment on the other issues. From my view of the record, March 25, 1987 is the date of the first tender by Attorney Patterson for Alfa. There is no mention of this tender in the 1989 opinion most probably because it was not in the record before this Court which was an appeal of an order dated March 23, 1987. Thus what troubled the Court in 1989 was the lack of an explanation for the failure to have tendered the undisputed $1,000 at some time reasonably soon after November 1, 1985 when the medical bills were submitted. Nothing in this record, as I read it, or in the trial court's bench ruling or order supplies that answer.

¶58. Cossitt returned the March 1987 tender stating that she was taking an appeal. Upon remand an additional tender was made and by April 1989, that tender was made expressly without condition. Thus, Cossitt's claim regarding 7-1/2 years of deprivation is without merit. Any refusal to tender ended at least by April 1989, after this Court's March 1989 decision. In fact, in March 1987 when Cossitt returned the initial draft for $1,000 there was no suggestion by Federated that it was paying on any condition and Cossitt did not bother to clarify the issue before returning the draft. It seems clear then that the period of March 1987 to March 1989 would not be a period of bad faith refusal. This leaves the period of November 1985 to March 1987 unexplained.

¶59. Justice Sullivan suggests in dissent that the majority opinion holds that the refusal to submit the $1,000 unconditionally is acceptable practice. The fact is that the record does not reflect such a refusal as I see it. The record reflects nothing for the period November 1, 1985 to March 1987 in terms of a discussion of payment of the $1,000. Perhaps this can be explained. Federated hired counsel and sought a declaratory judgment within a few months. Our 1989 opinion suggests, however, that this does not let them off the hook for the $1,000. I do not see what has changed.

¶60. Finally, as to *State Farm v. Roberts*, cited by the majority, I see a distinction between different positions, as between insurer and insured, on unliquidated damages and different positions as to the amount of coverage with respect to the duty to tender. Where there is a dispute as to the latter, the insurer should tender the amount that it contends it owes unconditionally.

¶61. I would reverse the judgment of the trial court with respect to summary judgment on the medical pay bad faith issue. That issue cannot be decided any more on the record before us than it was on the record before us in 1989. This is especially so when we do not consider the deposition testimony, which may be the only evidence in the record for the period November 1985 until March 1987.

**SULLIVAN, P.J., JOINS THIS OPINION.**

**SULLIVAN, PRESIDING JUSTICE, DISSENTING IN PART:**

¶62. I agree with the majority's conclusions regarding all issues in this case other than Issue I(B) on Cossitt's claim of bad faith. Because I believe that the result reached by the majority opens the door for future abuse by insurance companies in denying legitimate claims, I must respectfully dissent.

¶63. In order to establish a prima facie case of bad faith against Alfa, Cossitt was required to prove that in denying or delaying Cossitt's claim, Alfa "acted with (1) malice, or (2) gross negligence or reckless disregard for the rights of others." *Caldwell v. Alfa Ins. Co.*, 686 So.2d 1092, 1095 (Miss. 1996) (quoting Blue Cross & Blue Shield v. Maas, 516 So. 2d 495, 496 (Miss. 1987)). The majority concludes that Alfa never actually denied Cossitt's claim, but finds instead that there was merely a reasonable delay due to the legitimate "pocketbook dispute" as to the amount owed to Cossitt under the policy. I do not join the majority's opinion on this matter, and to the extent that this Court's previous decision in *State Farm Mutual Automobile Insurance Co. v. Roberts*, 379 So.2d 321 (Miss. 1980), holds otherwise, I would overrule that opinion.

¶64. As Cossitt points out in her brief to this Court, there was no dispute between the parties regarding the $1,000 which Alfa admitted that it owed to Cossitt. The majority concedes that Alfa could easily have tendered the undisputed $1,000, but holds that Alfa's refusal to unconditionally tender the amount does not rise to the level of an intentional tort. I disagree. By offering the $1,000 check, but only upon the condition that the payment was for full satisfaction of Cossitt's medical coverage, Alfa essentially forced Cossitt into refusing the partial payment for fear of losing any additional coverage to which she might be entitled. The better result would be to require Alfa to pay the undisputed amount unconditionally and proceed to trial on any remaining claimed coverage. To hold otherwise opens the door for other insurance companies to similarly back their insureds into a corner, forcing them to choose between an amount lesser than the total amount of coverage or nothing. Consumers purchase insurance to protect themselves against economic hardship in the face of an unexpected accident or illness. Considering the number of insureds who are financially dependent upon payment of their coverage, we should not tolerate delay in payment of any undisputed amounts of coverage by insurance companies.

¶65. In *Travelers Indemnity Co. v. Wetherbee*, 368 So.2d 829 (Miss. 1979), this Court addressed whether a jury instruction on punitive damages was appropriate when an insurer delays or denies payment of an undisputed item of coverage while investigating any remaining coverage under a single policy. We held:

> [I]f a separate item of coverage in a multi-coverage policy may be unenforceable because of the misrepresentations of the insured, then surely nonpayment of a separate item of coverage by the insurer is likewise subject to penalty. Differently stated, an insured is penalized for misrepresentations through loss of coverage, whereas the insurer is penalized for wrongful acts through punitive damages.

*Wetherbee*, 368 So.2d at 835. The insurer may be held liable for punitive damages for delaying or denying payment on one item of coverage even if payment on the other item(s) is legitimately delayed due to a dispute between the insurer and the insured. *Id*. Similarly, the jury in the present case should

have been allowed to consider whether Alfa was liable for punitive damages for delaying payment of the uncontested $1,000 while the dispute over any remaining coverage was resolved.

> Where an insurance carrier denies or delays payment of a valid claim, punitive damages will not lie if the carrier has a reasonable cause for such denial or delay. . . . Thus, where the parties dispute the existence and legitimacy of the carrier's reason for delay or denial, these issues are ones of material fact, and the plaintiff is entitled to have a jury pass upon his claim for punitive damages if reasonable minds could differ as to the legitimacy of the carrier's reason.

*Stamps v. Estate of Watts*, 528 So.2d 812, 814-15 (Miss. 1988) (citations omitted). Reasonable minds could differ on the issue of whether Alfa's delay in tendering the $1,000 due to the dispute over the remaining claimed coverage was legitimate. The jury should have been allowed to consider whether Alfa's delay in unconditionally tendering payment of the undisputed $1,000 to Cossitt amounted to bad faith.

¶66. Cossitt entered into a business contract with Alfa for which she paid. That contract provided among other things for payment of the $1,000 under the circumstances of this case, which Alfa admits to owing. For Alfa to take the position which it does here, and to which the majority gives its blessing, is not only bad faith but bad business practice which should not be countenanced.

¶67. Cossitt presented sufficient evidence to the trial court to survive Alfa's motion for summary judgment and require that the issue of bad faith be presented to the jury. I would reverse the trial court's award of summary judgment on the issues of bad faith and the amount of medical payments owed to Cossitt and remand the case for further jury findings.

**BANKS AND ROBERTS, JJ., JOIN THIS OPINION.**

1. Now M.R.A.P. 10(e).