SAVOIE, Judge.
This case arises from an automobile accident which occurred on November 21, 1981. Plaintiffs, Katherine Mendez and her three children, were injured in the accident. Defendant, American Fire and Indemnity Company, appeals only the amount of damages awarded to Katherine Mendez. We amend and affirm.
The accident occurred when a vehicle driven by Theresa Bailey ran a stop sign and struck the vehicle driven by Katherine Mendez. At trial, liability was stipulated to be in favor of plaintiffs, leaving only the determination of quantum.
Katherine and her three children, Jonathan, Tony and Nicholas, were in the car at the time of the accident. All were injured, but only Katherine suffered serious injury. She was taken to the hospital where she remained for four days. Katherine sustained a concussion, a whiplash, injured right knee, and bruises on her arms, back, right leg and stomach. After being released from the hospital, Katherine remained at home in bed for approximately three weeks.
*1273 After the evidence was presented at trial on June 9, 1983, the trial court awarded Katherine $20,000.00 for physical pain and suffering, $4,000.00 for mental pain and suffering, and $3,583.30 for past and future medical expenses. The children were also awarded damages for their injuries. American Fire appeals only the amount awarded to Katherine for her physical and mental pain and suffering.
ASSIGNMENTS OF ERROR
American Fire alleges the trial court abused its discretion in awarding Katherine Mendez:
1. $20,000.00 for physical pain and suffering; and
2. $4,000.00 for mental pain and suffering.
I.
American Fire argues that the trial court’s award of $20,000.00 to Katherine Mendez for physical pain and suffering was excessive and should, therefore, be reduced.
Most of the testimony presented regarding Katherine’s physical condition was elicited from four medical witnesses: Laughlin Winkler, M.D., internist; Robert Stuart, M.D., radiologist; Luis Matta, M.D., orthopedist; and Charles Gideon, chiropractor. The following is a brief summary of their testimony.
Dr. Winkler treated Katherine when she arrived at the hospital on November 21, 1981. Dr. Winkler continued as treating physician until Katherine asked to be discharged on January 29, 1982. On that date, Katherine’s only complaint was an occasional flare-up of her neck. She' mentioned nothing about any problems with her back. Katherine informed Dr. Winkler she had stopped going to physical therapy after only two weeks. At the time of the discharge, Dr. Winkler testified Katherine had sustained a cervical strain which Dr. Winkler expected to be resolved within three to six months.
After reviewing the x-rays taken while Katherine was in the hospital and those taken by the chiropractor, Dr. Stuart testified all of the vertebrae in the cervical, thoracic and lumbar regions were normal. Dr. Stuart found no indication of the sub-luxations which the chiropractor had found to be the cause of Katherine’s problems. In fact, Dr. Stuart stated the chiropractor had not taken x-rays from a sufficient number of different angles for any one to reach a conclusive diagnosis. Dr. Stuart did find one of Dr. Gideon’s x-rays was mislabeled because it showed Katherine’s heart on the right rather than the left side of her chest.
On June 6, 1983, Dr. Matta conducted a complete examination of Katherine, including taking a new set of x-rays. Dr. Matta testified he did not elicit any significant findings during the approved orthopedic method of examination to justify any allegations of residual immobility caused by the automobile accident. Dr. Matta also testified that the x-rays he took revealed no abnormalities, particularly no subluxations. He also examined the x-rays taken by Dr. Gideon and found them to be within normal limits. Dr. Matta concluded from his examination that Katherine suffered no residual injuries as a result of the accident.
Dr. Gideon testified that Katherine first went to his office on April 9, 1982, complaining of pain in her neck, left shoulder, middle and lower back, headaches, and dizziness. After completing his initial examination which included x-rays, Dr. Gideon concluded that Katherine’s problems were caused by a unilateral subluxation of the C — 1 vertebra. He defined a subluxation as an incomplete or partial dislocation. He also found that most of the thoracic and lumbar vertebrae were out of position. At the time of trial, Dr. Gideon was unable to say how much longer his treatment of Katherine would have to continue.
The record reflects that the three medical doctors testified Katherine suffered no residual injuries from the accident. Neither Dr. Stuart nor Dr. Matta, after examining x-rays taken within a few days of the accident, approximately four months later and more than one and one-half years after the accident, found any injury to Katherine’s spine. Only Dr. Gideon found that *1274 Katherine suffered a spinal injury which resulted in residual difficulty. Dr. Gideon ascribed this residual difficulty to the accident on the basis of the history given him by Katherine. Apparently, the trial court accepted Dr. Gideon’s testimony in its entirety and disregarded that of the three medical doctors.
The trial court in its reasons for judgment found that Katherine was unconscious for twenty-four hours following the accident. The only support for this is Dr. Gideon’s recitation of Katherine’s history as she allegedly related it to him. This clearly was hearsay testimony. The medical records introduced at trial included the notes of the nurses who cared for Katherine that day. The notes reveal that Katherine, while somewhat dazed, was able to speak and knew where she was. Dr. Winkler also testified that Katherine complained of her various injuries and was able to sit up during the initial examination. Clearly, a person who is unconscious would not be able to perform such acts.
The trial court has broad discretion in setting the amount of general damages. La.C.C. art. 1934(3). The standards for reviewing general damage awards to be followed by appellate courts were set out by the Louisiana Supreme Court in Reck v. Stevens, 373 So.2d 498 (La.1979), and Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977). In Coco, the Court stated:
“We do reemphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence.” (Citations omitted.) 341 So.2d at 335.
In Reck, the Court stated:
“Thus, the initial inquiry must always be directed at whether the trier court’s award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact’s ‘much discretion,’ La.Civ.C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, or insufficient. Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award for the present case.” (Citations omitted.) 373 So.2d at 501.
The individual facts and circumstances of the present case must be considered in determining whether a trial court abused its discretion and awarded excessive general damages. See McCarroll v. Asplundh Tree Expert Company, 427 So.2d 881 (La.App. 1st Cir.1982), writ denied, 432 So.2d 268 (La.1983).
The record reveals that Katherine Mendez was seen on November 21, 1981, the day of the accident, by Dr. Winkler. Dr. Stuart examined Katherine’s x-rays taken after the accident. Neither found any spinal injury comparable to that described by Dr. Gideon. Dr. Winkler last saw Katherine on January 29, 1982, at which time she was discharged at her request. On April 9, 1982, some five months after the accident and almost three months after her discharge, Katherine went to Dr. Gideon for the first time. The appearance of these spinal subluxations dates from the April 9, 1982 visit to Dr. Gideon. It is clear that Katherine’s treating physician for her accident-related injuries is Dr. Winkler. Even if we were to equate the chiropractic testimony of Dr. Gideon with medical testimony, the medical testimony of Dr. Wink-ler would prevail since the law provides that “the testimony of a physician who *1275 examines and treats the claimant from the inception of injury is usually entitled to greater weight than the opinion of one who examines the claimant later.” Hayes v. Commercial Union Assurance Company, 459 So.2d 1245, 1250 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1247 (La.1985). Dr. Winkler’s conclusion that Katherine suffered only from cervical strain when discharged, therefore, should carry the most weight.
Dr. Gideon’s conclusion that Katherine suffered from subluxations caused by the accident of November 21, 1981, is not supported by a preponderance of the evidence. Therefore, we find that the record clearly reveals the trial court abused its discretion in awarding Katherine Mendez $20,000.00 for physical pain and suffering under the facts and circumstances of this case. We find the highest award which reasonably could be awarded by the trial court to be $10,000.00.
II.
American Fire also argues the trial court’s award to Katherine Mendez of $4,000.00 for mental pain and suffering was excessive and should be reduced.
Dr. Richard Strobach, M.D., a psychiatrist, testified by deposition filed into the record that he saw Katherine in his office on two occasions, October 8,1982 and October 18, 1982. From his examination of Katherine, Dr. Strobach diagnosed her as suffering from chronic post traumatic stress disorder with some depressive features. Katherine suffered lapses of memory as well as anxiety over her children’s reactions to the accident. By the time of the second visit, Katherine seemed to be somewhat improved. The doctor assumed Katherine did not continue to suffer serious problems since she did not return after the second visit.
There is no evidence in the record which contradicts Dr. Strobach’s findings. Therefore, we cannot say the trial court abused its discretion in awarding Katherine $4,000.00 for mental pain and suffering. This assignment of error is without merit.
Accordingly, the judgment of the trial court is amended insofar as the award for physical pain and suffering, which award is reduced from $20,000.00 to $10,000.00. The judgment of the trial court is affirmed in all other respects. Costs of this appeal are to be paid one-half by plaintiffs and one-half by defendant.
AMENDED, AND AS AMENDED, AFFIRMED.
SHORTESS, J., concurs with reasons.