536 So.2d 632 (1988)
Clyde P. MARCEL
v.
ALLSTATE INSURANCE COMPANY.
No. 87 CA 0567.
Court of Appeal of Louisiana, First Circuit.
November 22, 1988.
Rehearing Denied January 9, 1989.
Writ Denied March 10, 1989.
*634 Denis J. Gaubert, III, Houma, for plaintiff and appellant, Clyde P. Marcel.
Stephen M. LaRussa, Houma, for defendant and appellee, Allstate Ins. Co.
Before EDWARDS, SHORTESS, LANIER, CRAIN and LeBLANC, JJ.
SHORTESS, Judge.
Clyde P. Marcel (plaintiff) filed suit against Allstate Insurance Company (Allstate) for damages resulting from an accident which occurred on May 3, 1984, in Bayou Blue, Terrebonne Parish, when his vehicle was struck in the rear by a vehicle driven by an underinsured motorist. Plaintiff alleged that Allstate refused to pay his uninsured/underinsured claim within sixty days of receipt of satisfactory proof of loss as required by LSA-R.S. 22:658. He also sought statutory penalties and attorney fees.
A jury, after finding that plaintiff was injured in the accident, only awarded his medical expenses and assessed costs against him. Plaintiff has appealed to this court.
FACTS
Immediately after the accident, plaintiff contacted his uninsured/underinsured insurer, Allstate, to report the loss. On May 9, 1984, he submitted two medical bills to Allstate totaling $48.12 which were paid immediately. On May 10, 1984, plaintiff's wife spoke with an Allstate representative and indicated that the other driver's identity had been determined and that a claim would be made against Michael E. Gall and his insurer.
The testimony conflicts as to whether there was any additional contact with Allstate until it received a letter dated March 5, 1985, from plaintiff's attorney, notifying Allstate of his representation and including certain medical information. Additional correspondence, dated March 13, 1985, provided Allstate with more medical information and a copy of the accident report.
Cody Oubre, Allstate's adjuster, testified that on March 28, 1985, he attempted to contact the driver of the other car as well as a witness whose name appeared on the police report but was unsuccessful. On April 10, 1985, Oubre requested an "independent"[1] medical examination. The examination was performed on April 23, 1985, by a Dr. Neil Maki, an orthopedist whose *635 report was received by Allstate three days later.
On May 15, 1985, Oubre received an offer from plaintiff's attorney to settle for Allstate's policy limits. Two days later Oubre responded by saying that he would evaluate the claim. By March 23, 1985, Allstate had received the reports of Dr. William Kinnard, Dr. Natalia L. Ratiner, and Dr. William J. Ellender. Dr. Kinnard, an orthopedist, had evaluated a CAT scan, myelogram, and an electromyogram, and diagnosed a disc protrusion at L4-L5. Dr. Ratiner, a neurologist, performed the electromyograph. Dr. Ellender had been rendering chiropractic treatment to plaintiff since the accident. By early April 1985 Allstate had received a copy of Dr. Thomas N. Givens' report of the examination he had made on the day of the accident. Oubre requested an additional report from Givens on May 20, 1985, which was received on July 19, 1985. Dr. Givens was plaintiff's family physician.
On July 1, 1985, Allstate answered plaintiff's suit and asserted that his negligence was the sole and proximate cause of the accident. On August 12, 1985, Allstate unconditionally tendered to plaintiff $9,000.00 under its uninsured/underinsured motorist coverage.[2] Oubre requested an additional independent examination when it became apparent that the tendered amount was unacceptable as a complete settlement. An appointment for this examination was made with a neurologist, Dr. Warren Levy, in New Orleans. Levy conducted the examination on October 18, 1985, and issued his report on October 27, 1985. Allstate amended its answer to admit liability on November 18, 1986, six days prior to the commencement of the trial.
The interrogatories presented to the jury required findings as to whether plaintiff had been injured; the amount of damages, if any, for past and future pain; the amount of damages, if any for disability; the amount of damages, if any, for past and future loss of earnings; the amount of damages if any, for past and future medical expenses; and whether Allstate had been arbitrary and capricious in the delay of and the amount of its tender.[3]
The jury found that plaintiff had been injured but awarded only an amount for past and future medical expenses. Since plaintiff had already received Allstate's $9,000.00 tender and $2,000.00 in medical payment benefits, together with $5,000.00 from the tort-feasor, the judgment awarded him nothing. Additionally, the jury determined that Allstate had not acted arbitrarily.
The jury's finding that plaintiff was injured and incurred or would incur $5,200.00 in medical expenses is not consistent with its refusal to award general damages. Harper v. Boudreaux, 496 So. 2d 439 (La.App. 1st Cir.1986). The jury erred as a matter of law. 496 So.2d at 440-41. Because the finder of fact commited an error of law rather than an abuse of discretion (i.e., because it failed to award any damages rather than because it simply awarded an amount not within its discretion),[4] we must assess, res nova, the amount of damages appropriate under the circumstances. Mart v. Hill, 505 So.2d 1120, 1128-29 (La.1987).
QUANTUM
Plaintiff began consulting Dr. Ellender on May 9, 1984, less than a week after the accident. He made thirty visits to Ellender from May 1984 to February 1985. On February 25, 1985, plaintiff consulted Dr. Kinnard. Kinnard testified that on plaintiff's first visit, he complained of numbness and pain that radiated downward from the lower back, anatomically following a specific never pattern through the back of the thigh, calf, and a particular area of the *636 foot. Kinnard testified that he considered plaintiff's complaints consistent with a particular nerve pattern and highly credible.
Dr. Kinnard performed a CAT scan on February 26, 1985, which revealed a two- to three-millimeter "bulging" disc at L4-L5. He then recommended an electromyogram, but the results were inconclusive. A myelogram, performed on April 8, 1985, confirmed the CAT scan. A discogram additionally revealed the abnormality.
While Allstate's expert witnesses disagreed with Dr. Kinnard's findings, the jury found otherwise. That finding has not been appealed and, moreover, is supported by the record. What is before us is not whether plaintiff was injured, but rather, the elements of his damages.
The testimony varies as to how much work plaintiff missed due to his injuries. Richard Bergeron, his supervisor at Houma Valve Service, testified that plaintiff lost approximately two months' time, while plaintiff estimated his lost time at between four and six weeks. At that time, plaintiff was earning $10.25 an hour, or approximately $410.00 per week. Accepting the lowest of these three approximations (four weeks), we award lost wages in the amount of $1,640.00. Plaintiff testified that he had not, at the time of trial, missed any work in over a year.
In assessing general damages for past and future pain and suffering, we note initially that plaintiff was assigned a 10% permanent partial disability by Dr. Dexter Gary, a partner with Dr. Kinnard at Houma Orthopedic Clinic. The Clinic treated plaintiff for his injuries from February 1985 to July 1986. Kinnard testified that he agreed with Dr. Gary's assessment. Kinnard also recommended surgery by April 1985, but plaintiff declined.
Drs. Maki and Levy, who examined plaintiff for Allstate, testified somewhat differently than plaintiff's treating physicians. Dr. Maki's diagnosis is not inconsistent with plaintiff's subjective complaints of pain. Dr. Levy concluded that plaintiff suffered no neurological disability but could not refute any determination of orthopedic disability. Maki's examination lasted fifteen minutes, while Levy's took five minutes.
In making our assessment of general damages, we give the testimony of plaintiff's treating physicians at the Houma Orthopedic Clinic[5] more weight than that of Drs. Maki and Levy, who saw plaintiff only once, respectively, for less than thirty minutes, combined. Wells v. Allstate Insurance Co., 510 So.2d 763 (La.App. 1st Cir.), writ denied, 514 So.2d 463 (La.1987); Hayes v. Commercial Union Assurance Co., 459 So.2d 1245 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1247 (1985). Mendez v. American Fire & Indemnity Co., 468 So.2d 1272 (La.App. 1st Cir.), writ denied, 470 So.2d 882 (1985).
Plaintiff and his supervisor, Bergeron, both testified that plaintiff's ability to fulfill his work duties had been limited since the accident. Bergeron testified that plaintiff had been told to leave the "heavy work" to the other machinists. Plaintiff's wife testified that plaintiff had become moody and short-tempered since the accident. She additionally testified that he was limited in his ability to fulfill his household responsibilities and to engage in the recreational activities, particularly fishing, that he had previously enjoyed.
Based on the foregoing, we conclude that plaintiff has suffered general damages of $50,000.00. He received $14,000.00 from Allstate and the tort-feasor earlier, and Allstate is entitled to a credit in that amount. Plaintiff's special damages amount to $1,640.00 in lost wages and $5,200.00 in medical expenses, less $2,000.00 previously paid. The total award is $40,840.00.
STATUTORY PENALTIES AND ATTORNEY FEES
Plaintiff asserts that the jury erred in not awarding penalties and attorney fees under LSA-R.S. 22:658. That statute requires payment of claims within sixty days *637 of the receipt of "satisfactory proofs of loss."
LSA-R.S. 22:658 applies to underinsured motorist coverage. Hart v. Allstate Insurance Co., 437 So.2d 823 (La. 1983). Sufficient proof of loss within the meaning of LSA-R.S. 22:658 in the context of underinsured motorist coverage is that which apprises the insurer that an at-fault underinsured driver caused damages to its insured. McDill v. Utica Mutual Insurance Co., 475 So.2d 1085, 1089 (La.1985). The extent of the damages must also be shown, but it would be impracticable to require the insured to prove the exact extent of damages which, typically, are subjective and inexact. 475 So.2d at 1091.
By March 27, 1985, Allstate had been informed of the $5,000.00 policy limits tender by the insurer of the at-fault driver. Allstate had already received the reports and narratives of Drs. Kinnard, Ratiner, and Ellender. On April 23, 1985, Allstate's requested independent medical examination had been performed, and by April 26, 1985, they had received the report from that examination. On May 2, 1985, suit was filed.
Allstate tendered $9,000.00 on August 12, 1985, over one hundred days after the suit was filed.[6] No additional medical information became available to Allstate in the interim between the filing of suit and the tender except for an additional report from Dr. Givens. This report was requested on May 20, 1985, and received on June 19, 1985. Dr. Givens was consulted only once, on the day of the accident, regarding plaintiff's back injuries. Allstate had sufficient medical information by April 26, 1985, to evaluate plaintiff's claim and tender a reasonable amount, unconditionally. Attorney fees and penalties can be avoided by the unconditional tender of a reasonable amount when there is disagreement over the total amount owed. Landry v. State Farm Insurance Co., 529 So.2d 417 (La.App. 1st Cir.1988); see also 475 So.2d at 1092. While Allstate asserted until six days prior to trial that plaintiff's own fault caused the accident, there is no evidence that this contention was reasonable. Without commenting on its sufficiency under LSA-C.C.P. art. 863, we note only that the assertion alone was insufficient to have supported any reasonable question as to Allstate's liability. Allstate made no reasonable tender within the sixty-day time period provided by LSA-R.S. 22:658. The express language of the statute requires that penalties be assessed in the amount of 12% on the total amount of the loss. The fact finder's determination with regard to penalties and attorney fees under LSA-R. S. 22:658 is partially one of fact and is not to be disturbed on appeal absent manifest error. Gulf-Wandes Corp. v. Vinson Guard Service, 459 So.2d 14 (La.App. 1st Cir.1984), writ denied, 464 So.2d 312 (1985). The jury's determination that Allstate was not arbitrary or capricious constitutes manifest error. The judgment of the trial court, insofar as it has failed to award general damages and lost wages, as well as attorney fees and penalties under LSA-R. S. 22:658, must be reversed.
COSTS
Plaintiff assigns error, additionally, in the trial court's assessment of costs against him. LSA-C.C.P. art. 1920 provides that costs are to be paid by the party cast, "unless the judgment provides otherwise" and that "the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable."
An assessment of costs can be reversed only upon a showing of an abuse of discretion. Robertson v. Penn, 472 So. 2d 927 (La.App. 1st Cir.), writ denied, 476 So.2d 353 (1985). The principles of equity, however, require certain limitations to this discretion. Johnson v. Marshall, 202 So.2d 465 (La.App. 1st Cir.), writ denied, 251 La. 217, 203 So.2d 555 (1967). In the absence of some equitable reason, costs should not be assessed against a wholly prevailing party. See 202 So.2d at 469 (citation omitted). *638 We find no reason here to support an assessment of costs against plaintiff. The trial court erred in doing so.
For the reasons stated above, there is judgment in favor of plaintiff for $40,840.00, together with legal interest thereon from date of judicial demand until paid. Statutory interest of 12% of $40,840.00 is also awarded. Attorney fees are awarded in the amount of 25% of $40,840.00. Allstate is taxed for all costs.
REVERSED AND RENDERED.
CRAIN, J., dissents and assigns reasons.
LANIER, J., dissents. I concur in the dissent by CRAIN, J., but would remand for a new jury trial on that issue.
CRAIN, Judge, dissents.
The trial court instructed the jury to find the total amount to which plaintiff is entitled, if any, without regard to any amounts previously paid. The jury awarded medical expenses, but no general damages. Considering the instructions given by the trial court the award by the jury represents a finding of injuries which required expenditures for medical treatment, but no general damages. Such a verdict is an error of law. Harper v. Boudreaux, 496 So.2d 439 (La.App. 1st Cir.1986). Consequently, it is correct that we must disregard the jury verdict in denying general damages and independently review the record to determine the amount of general damages due. McLean v. Hunter, 495 So.2d 1298 (La. 1986). In spite of the trial court's instruction, the jury knew the amount plaintiff had received. It is obvious that their verdict simply reflected their opinion that the plaintiff had already received adequate compensation. Although no weight can be given the jury verdict, my own independent review of the record results in the same conclusion.
It is uncontroverted that plaintiff had been treated for back pain on three separate occasions prior to the May 3, 1984, accident.
Dr. Thomas H. Givens, general practitioner and plaintiff's family physician, examined plaintiff immediately after the accident on May 3, 1984. His diagnosis was soft tissue injury of the cervical and lumbar muscle groups. He subsequently examined plaintiff on October 25, 1985, for an injury to the big toe which was unrelated to the May 3, 1984, accident. Plaintiff was again examined by Dr. Givens on March 24, 1986. Dr. Givens testified that at neither the October, 1985, nor the March, 1986, visit had plaintiff complained of neck or low back pain.
Dr. William J. Ellender, chiropractor, treated plaintiff from May 9, 1984, to March, 1985. Dr. Ellender's diagnosis was "[a]cute traumatic cervical strain/sprain, complex with a tender joint dysfunction, central bulge of the L4-L5 disk space, and chronic recurrent lumbar strain and sprain with accompanying intermittent nerve irritation." On December 21, 1984, plaintiff was seen by Dr. Ellender and complained of having aggravated his back in a boating incident. On that date plaintiff stated to Dr. Ellender that his back was "a hundred percent better with no leg or back pain." Plaintiff was last treated by Dr. Ellender in March, 1985, wherein plaintiff consulted Dr. Ellender regarding whether plaintiff should consult a physician for additional treatment.
Dr. William Kinnard, orthopedist, examined plaintiff on February 25, 1985, and noted muscle spasm and weakness in the big toe. In Dr. Kinnard's opinion, the results of the CAT scan performed on February 26, 1985, revealed a 2-3 millimeter central bulging disc at the L4-5 level; the nerve conduction study (EMG) was negative; the myelogram performed in April, 1985, revealed a one to two millimeter central bulging disc at the L4-5 level; and the lumbar discogram confirmed the findings of the myelogram. On April 15, 1985, Dr. Kinnard recommended that plaintiff undergo a laminectomy with removal of the disc and possible fusion. He subsequently examined plaintiff in July, 1985, and July, 1986. The physical examinations were completely normal and surgery was no longer recommended. Plaintiff was discharged *639 from Dr. Kinnard's care in July, 1986. Dr. Kinnard testified that plaintiff has a 10% permanent physical impairment.
Dr. Neil Maki, orthopedist, examined plaintiff on April 23, 1985, at the request of defendant. He testified that the physical examination revealed a minimal amount of hamstring tightness during the straight leg raising test; the results of the CAT scan were within normal limits; the results of the myelogram and discogram were equivocal in that the mild degree of bulging present were within normal limits. His diagnosis was lumbar strain syndrome with a possibility of some lumbar disc disease or sciatica. In his opinion surgery was not recommended.
Dr. Donald J. Judice, neurosurgeon, examined plaintiff on May 6, 1985. Plaintiff had been referred to Dr. Judice by Dr. Kinnard. Dr. Judice testified that his initial impression was lumbar strain and recommended a CAT scan. In his opinion, the results of the CAT scan revealed a bulging disc at the L4-5 level; the myelogram indicated a "little bit of a bulge" at the L4-5 level; the results of the discogram were abnormal at the L4-5 level, which were compatible with either degenerative changes or the type of injury allegedly suffered by plaintiff in the accident. Conservative treatment was recommended.
Dr. Dexter Gary, orthopedist and associate of Dr. Kinnard, examined plaintiff in June, 1985. He testified that the clinical examination was normal and that based on a review of the EMG, discogram, CAT scan and myelogram, the diagnosis was a herniated disc at L4 and 5 resulting in a 10% permanent physical impairment. Plaintiff was advised to continue working and to return for treatment as needed.
Dr. Richard Warren Levy, neurosurgeon, examined plaintiff on October 18, 1985, at the request of defendant. He testified that the physical examination was unremarkable except for tenderness in the low back region and that the results of the CAT scan and myelogram gave no indication of a ruptured or herniated disc or abnormality which would cause neurological problems. He stated that the discogram was technically invalid due to the placement of the needle away from the center of the disc. In his opinion plaintiff had no neurological abnormality and was not neurologically disabled.
Other than for a check-up with Dr. Gary in July, 1986, plaintiff received no medical treatment relative to the accident for one and one-half years prior to trial. Plaintiff is employed as a machinist for Houma Valve Service Company. His work duties generally do not require the lifting of weights in excess of two or three pounds. He received a salary increase in April, 1985. In October, 1985, he was essentially promoted to a position wherein he assumed supervisory duties. Plaintiff missed approximately four to six weeks of work as a result of the accident, however, he missed no work during the entire year prior to trial.
Plaintiff has proved by a preponderance of the evidence that he suffered a lumbosacral strain/sprain from the May 3, 1984, accident. Plaintiff has received $14,000 in addition to medical expenses of $2,000. The jury award of medical expenses in the amount of $5,200 in addition to the amounts previously received adequately compensates him for his injuries.
I respectfully dissent.
NOTES
[1] The word "independent" insofar as it implies impartiality is misleading. It means simply that Allstate wished to have a medical opinion other than from plaintiff's treating physicians.
[2] The tort-feasor insurer had paid its $5,000.00 limits of liability in compromise of plaintiff's claim against it and Gall in March 1985.
[3] The interrogatories additionally requested a finding as to attorney fees if Allstate was determined to have been arbitrary and capricious.
[4] Cf., Coco v. Winston Industries, 341 So.2d 332 (La.1977).
[5] The testimony of both Drs. Kinnard and Gary indicates that the partners at the clinic render treatment collectively, that is to say that a patient is usually treated by more than one of the partners.
[6] The draft was dated August 2, 1985, but was sent to plaintiff's counsel by correspondence dated August 12, 1985.